# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 21 2016, 9:39 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Edward L. Murphy, Jr.
Andrew L. Palmison
Rothberg Logan & Warsco LLP
Fort Wayne, Indiana

Karl L. Mulvaney
Nana Quay-Smith
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Jeffrey A. Clark
Michael A. Barranda
Burt, Blee, Dixon, Sutton & Bloom, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Alan L. Stephens, M.D., and
Summit Plastic Surgery Center,

*Appellants-Defendants,*

v.

Jamie Fazio,

*Appellee-Plaintiff.*

June 21, 2016

Court of Appeals Case No.
02A03-1505-PL-357

Appeal from the Allen Superior Court.
The Honorable Stanley A. Levine, Judge.
Cause No. 02D03-1306-PL-235

**Barteau, Senior Judge**

## Statement of the Case

Alan L. Stephens, M.D., and Summit Plastic Surgery Center (collectively "Stephens") appeal from the trial court's order on a motion for additur and judgment on the evidence after a jury returned a verdict in favor of Stephens on the issues of causation and damages in Jaime[1] Fazio's complaint. We reverse and remand.

## Issue

Both parties seek review of the trial court's judgment awarding damages to Fazio. The dispositive issue, however, is whether the trial court erred by granting Fazio's motion, vacating the jury's verdict, and entering judgment in favor of Fazio for $8,847.00, the total cost of the procedures performed by Stephens.

## Facts and Procedural History

In 2002, when Fazio was twenty-four years old, she had her first cosmetic elective procedure under the care of Dr. Robert N. Severinac. After giving birth to three children by that time and breastfeeding them, Fazio was unhappy with the appearance of her post-baby body and sought to have procedures performed to address the issues causing her displeasure. To that end, Fazio had a breast lift and a bilateral breast augmentation with saline implants, in addition to a

---

[1] Although the Appellants' Brief makes reference to "Jamie" Fazio, the pleadings and other documents refer to her as "Jaime" Fazio. We will refer to her as Jaime Fazio throughout this opinion.

tummy tuck, tightening the skin of her lower abdomen. After the completion of the procedures, Fazio was pleased with the results.

[4] In May 2011, Fazio graduated from nursing school. She had been employed by Parkview Health since 2000, and in 2011, at the time of her graduation, was employed by Parkview Behavioral Health as a mental health technician. Later in 2011, she took a full-time nursing position at Parkview Regional Medical Center as a "surgical/trauma/ICU" nurse. Tr. p. 48.

[5] After graduating from nursing school, Fazio decided to have additional, elective cosmetic surgery performed to improve her appearance and to feel better about herself. Over the course of the four to five years prior to that time, although having a petite build at five feet in height, Fazio had gained approximately seventy pounds, but lost the weight while going through the dissolution of her marriage, stabilizing at 114 pounds. This fluctuation in weight left her with sagging skin, loss of breast volume, and breasts that sat lower than they had previously after her first elective, cosmetic surgery.

[6] Fazio had an initial consultation with Stephens on May 26, 2011. During that consultation, Fazio expressed three areas of concern. First, she was displeased with breast looseness including nipples that sagged below the inframammary fold—the place where the breast and the chest meet. This condition is caused by weight fluctuations, and will remain in patients who lack good elasticity in the skin. If that is the case, and was with respect to Fazio, a form of skin tightening procedure is needed to remedy the condition. Fazio, who had

frequently visited tanning salons on a long-term basis, and was a cigarette smoker prior to undergoing the procedures, suffered from a decrease in her skin elasticity as a result of both behaviors.

[7] Next, Fazio was concerned about the width or size of the areolas on both of her breasts. During the initial consultation, Stephens noted that Fazio's peri-areolar scars from her first surgery performed by Severinac had healed well. However, the nipple areolar complexes had fairly significant widening, particularly on the right breast, which was consistent with the asymmetry of her breasts and the laxity of her skin.

[8] The third area Fazio wanted to improve was her upper abdomen. Fazio had skin laxity in her upper abdomen above her navel. The skin in the area of the abdomen below her navel remained tight from the prior abdominoplasty, or tummy tuck. However, her abdomen carried a scar from that prior procedure across her lower stomach, just above her pubic bone.

[9] After discussing Fazio's concerns and conducting a physical examination of her, Stephens recommended the removal of Fazio's aging breast implants, and insertion of larger implants to improve the fill of Fazio's breasts. He also recommended a skin tightening procedure to lift Fazio's breasts and diminish the size of her nipple areolar complexes. Stephens further recommended a mini-tummy tuck to tighten the skin of Fazio's upper abdomen. Fazio left Stephens's office to consider the recommended procedures.

[10] Fazio returned to Stephens's office for a second visit on June 16, 2011. Stephens repeated Fazio's physical examination and noted that the condition of Fazio's breasts and abdomen had not changed. In order to allow for an accurate post-operative evaluation of the results of the surgery, Stephens took standardized pictures of Fazio's breasts with her arms down at her sides. Those pre-operative photographs along with Stephens's measurements revealed that Fazio's breasts were not symmetrical, that the areolar complex on Fazio's right breast was abnormally large and oval in shape as compared to the areolar complex in the left breast, which was two centimeters smaller and round in shape. Also, Fazio's right breast implant projected more in the upper half and had a fuller slope than the left breast. Before leaving the office, Fazio scheduled the recommended surgical procedures. She was given a post-surgical instruction booklet and a consent form specifically addressing the procedures that were scheduled. Fazio read and understood the information in the booklet.

[11] Stephens performed Fazio's surgery on June 29, 2011. He removed Fazio's old saline implants and inserted new, slightly larger implants in the breast capsules, or scar tissue pockets, which developed after Fazio's first implants were inserted by Severinac. Stephens adjusted the amount of excess skin on Fazio's right breast because it was asymmetrical and lower than her left breast. He also made an incision around each nipple areolar complex to reduce their size, further tightening Fazio's loose breast skin.

[12] In order to perform the upper tummy tuck, Stephens made twelve centimeter incisions underneath each breast in order to gain access to and tighten the loose

abdominal skin at the top of Fazio's abdomen. Stephens chose the location of the incisions for a couple of reasons. His goal was to hide the incisions underneath Fazio's breasts as they fell naturally. Also, in order to avoid stress on the implants, the incision had to be placed on the firm soft tissue just underneath the breasts to anchor the upper abdominal skin. Placement any higher in the breast capsule, which holds the implants, would result in pulling down the breasts, which would be contrary to Fazio's goal. Stephens concluded that Fazio's incisions needed to be placed there because she had very thin breast capsules and her skin was going to continue to stretch over time.

[13] After inserting drains, Stephens re-evaluated the results of Fazio's breast lift prior to closing the sutures. He decided that because the left breast continued to have less projection than the right, he would increase the projection by adding twenty-five milliliters of saline into the implant. Fazio was discharged later that day with a prescription for narcotic pain medication and a muscle relaxer. When Stephens's staff contacted Fazio the following day, they confirmed with her that the drains were functioning and that Fazio had no problems with her incisions.

[14] Fazio's first post-operative visit was on July 5, 2011, six days after her surgery. Stephens examined Fazio and determined that she had no abnormal discoloration, no bleeding, and no signs of infection. He did note that there was more fullness in the upper part of Fazio's right breast, which he attributed to the additional surgical work required to correct the specific issues with Fazio's right nipple complex. He determined that the fullness in the right breast

was nonetheless within the realm of normal post-operative change and difference.

[15] Fazio reported that she was experiencing mild pain, but had made the personal decision three days prior to stop using the pain medications, despite the pain relief provided by them, because she did not like the way the medication made her feel otherwise. She informed Stephens she had also gone shopping with a friend the day before her first post-operative appointment. Based on all of the information he gathered from this visit, Stephens determined that Fazio was doing well, had good pain relief, and characterized the visit as a routine post-operative visit.

[16] Before Fazio left that day, Stephens reinforced his written post-operative instructions to take it easy, directing her to engage in only light activities. He also instructed Fazio to return for another follow-up appointment in three weeks, which was the standard amount of time between visits, to determine if there was a decrease in swelling and to monitor any new issues with pain that might arise in the course of her post-operative recovery. Fazio was instructed to follow Stephens's verbal and written instructions with respect to her post-operative care in order to promote healing without unnecessary delay. She was also instructed to follow the schedule of post-operative appointments.

[17] Among the specific instructions she was given was the instruction to protect her surgical scars from sunlight for a year after surgery, since sunlight could damage her skin—even through a bathing suit. She was explicitly instructed to

continuously wear a specialized support bra twenty-four hours a day for the first two weeks following surgery. After that period of time had passed, she was instructed to wear it at all times when she was awake, during the period of post-operative healing. Use of the bra was important to Fazio's post-operative recovery because it served as a "dressing" to hold the breasts and implants in the perfect position. Joint Exhibit Book, Tab 8, p. 16.

[18] Fazio was also instructed to be patient with the healing process and that the ability to heal varies on a number of factors including genetic background, overall state of health, and lifestyle. Further, she was told that her cooperation in the healing process was extremely important and in her best interest.

[19] An additional warning given to Fazio was that she might experience breast asymmetry as she healed. The post-operative booklet specifically advised her as follows:

> Asymmetry: It is quite common for the two breasts to heal differently. One may swell more, one may feel more uncomfortable, or the shapes may differ initially. After complete healing, they should look remarkably similar and natural. Patience is required, but if you are concerned, ask questions of Dr. Stephens or the nursing staff.

*Id.* at p. 20.

[20] Instead of waiting for her next, scheduled, follow-up appointment, which was to occur three weeks after the July 5, 2011 first post-operative visit, Fazio returned to Stephens's office on July 14, 2011, to express her displeasure with and anger about the asymmetry of her breasts. Fazio arrived at the office

wearing a strapless, sleeveless, terry-cloth cover-up dress, supported by a strapless, underwire "push up" bra, a clothing choice that did not comport with explicit instructions to wear the support bra, and which Stephens characterized as an "unusual" choice of clothing for a post-operative patient. Tr. pp. 225, 228. Fazio testified that she was embarrassed by the looks she received from others in the waiting room while waiting for that appointment. Fazio claimed that she wore the clothing to accentuate the post-operative asymmetry and to "showcase" her results to Stephens. *Id.* at 72. Stephens, who was alerted in advance by his staff about Fazio's unpleasant demeanor at this visit, did not recall her offering that explanation for her clothing choice. Stephens did agree there was asymmetry, but disagreed, however, that remedial measures were required at that very early stage of Fazio's recovery—just nine days after her first, post-operative visit.

[21] Stephens tried to reassure Fazio that the post-surgery asymmetry was normal, especially at that stage of her recovery. However, Fazio, who was upset, demanded a free surgery to repair it. Stephens recommended that Fazio refrain from having any surgery so soon after the procedure, that she allow the implants to settle into place, and that she allow her body to have time to heal. He explained why he believed the asymmetry existed and also told her what options were available if corrective action was necessary. Stephens told Fazio that she should refrain from wearing the underwire bra she was wearing that day because it, unlike the support bra, which was the post-operative directive, was not giving her the kind of support her body needed at that time to heal.

[22] Stephens directed Fazio to use an ace-bandage-type velcro strap to wrap around the upper half or upper poles of her breasts and to wear it twenty-four hours a day. Stephens believed that at two weeks post-surgery, Fazio could now use the strap to help the implants settle into position and to reduce the swelling in her breasts without compromising the healing of the incisions underneath her breasts. He stressed that the more the strap was used, the more effective it would be, but that it could take weeks or months for the swelling to reduce given the amount of surgery Fazio had undergone, particularly with the repairs to her right breast.

[23] After this office visit, Fazio admitted she wore the strap for only a couple of hours each of the two days she decided to use it, removing it and making the personal choice to discontinue its use altogether because she thought it was uncomfortable. Fazio did not communicate this information to Stephens or his staff.

[24] The week after this visit, she went to Florida for a six-day vacation, going to the beach and staying in the sun wearing a two-piece bathing suit during this trip. A week later, after returning home from that trip, Fazio left for a week-long cruise. She stated that she was not out in the sun very much at all on that trip, but did wear her bathing suit for a little more than three hours while on a shore excursion during the cruise. Fazio also continued tanning at the two local tanning salons where she held memberships.

[25]     Fazio never returned for a follow-up appointment with Stephens. Instead, Fazio chose to consult with Severinac shortly after returning from her second, post-operative trip, her cruise.

[26]     During her August 8, 2011, consultation with Severinac, her main complaint about her physical appearance was asymmetry of her breasts—that the right breast implant sat higher than the left. In his notes, Severinac observed that there was a two to three centimeter difference in the height of the implants, and described this as asymmetry and mal-position. At trial, Severinac stated that Fazio's asymmetry had already diminished since her last appointment with Stephens, three weeks prior, based upon his review of the pre-operative photographs taken by him that day, and photographs Fazio had someone take on July 14, 2011, the same date she made her last visit to Stephens's office.

[27]     At Fazio's request, Severinac performed a minor revision surgery on Fazio's right breast under local anesthetic on August 16, 2011. After that procedure, he described to Fazio what he had done. According to Fazio, Severinac explained that he made a three centimeter incision through Stephens's prior incision to adjust the right breast capsule, or "pull the implant down and put it in the breast pocket" and removed approximately thirty ccs or six teaspoons of saline from the right implant to make the breasts symmetrical. Tr. p. 88. At trial, Severinac testified that the procedure was not medically necessary, but was one option he used when a patient was upset about results. Another option was to use the strap Stephens had instructed Fazio to use. Fazio paid $1,950.00 to Severinac for the procedure.

[28] Another of Fazio's complaints involved the location of the scar under her left breast. She expressed no concern over the location of the scar under her right breast, but believed the incision under the left breast sat slightly lower and was visible when she wore her bikini. Severinac observed that the scar could possibly be elevated to a more hidden position under the mammary fold, but noted that Fazio had skin laxity issues. He agreed that after viewing his pre-operative photographs, the scar under the left breast was not visible under the breast fold. Severinac indicated that he would not surgically adjust the scar until a year had passed because scars can improve and fade over time and that healing depends upon the patient's compliance with post-operative instructions. Both Stephens and Severinac agreed and testified that the scars under Fazio's breasts were not visible when her arms were down by her sides. Prior to the time of trial, Fazio had obtained a quote of $1500 from Severinac for scar revision surgery but had not chosen to undergo the procedure.

[29] On June 27, 2013, Fazio filed a complaint[2] for damages against Stephens, claiming that she was Stephens's patient and the medical care or treatment she received was negligent and below the appropriate standard of care. More specifically, her complaint alleged as follows:

> COMES NOW the Plaintiff, Jaime C. Fazio ("Plaintiff"), and for her Complaint for Damages against the Defendants, Summit

---

[2] Because the amount of claimed damages did not exceed $15,000.00, Fazio did not first submit a proposed complaint to the Department of Insurance. *See* Ind. Code § 34-18-8-6 (1998).

Plastic Surgery Center and Dr. Alan L. Stephens, M.D. (collectively, "Defendants"), states as follows:

1. That Plaintiff was a patient of the Defendants in and around June and July of 2011, and received medical care and/or treatment from said Defendants.

2. *Said medical care or treatment rendered by Defendants was negligent and below the appropriate standard of care.*

3. That as a proximate result of the negligence of the Defendants, the Plaintiff has incurred injury, emotional damages, medical expenses, additional medical treatment, related expenses, lost wages, and/or intangible damages of a nature as to require compensation.

4. Plaintiff's Complaint is brought pursuant to Indiana Code § 34-13-8-6 as an action in which Plaintiff seeks damages in an amount not greater than $15,000.00.

WHEREFORE, the Plaintiff, Jaime C. Fazio, respectfully prays for an award against the Defendants in an amount that will fairly and fully compensate Plaintiff for all losses, injuries and damages, for the costs of this action, and for all other just and proper relief.

Appellants' App. p. 19 (emphasis added).

On July 10, 2013, Stephens filed an answer denying negligence and denying that the medical care provided to Fazio was below the appropriate standard of care. Stephens also asserted Fazio's contributory negligence as an affirmative defense.

In her response to certain designated interrogatories, Fazio stated as follows:

INTERROGATORY NO. 10: State specifically each and every act of negligence alleged against *each* Defendant alluded to in the Complaint.

ANSWER: Objection, discovery is ongoing. Dr. Stephens did a poor job placing implants and suturing incision. I believe Dr. Stephens is an agent of Summit Plastic Surgery Center.

. . .

INTERROGATORY NO. 33: Do you plan to use any expert testimony in this case?

ANSWER: At the present time, the Plaintiff has not yet retained an expert witness in this matter. Ms. Fazio will comply with all court orders regarding the filing of witness lists and disclosure of expert witness information. Once this information is determined, this answer will be supplemented.

INTERROGATORY NO. 34: If the answer to foregoing interrogatory is affirmative, please state:

a) Name and address;

b) Name and address of his/her employer or the organization with which he/she is associated in any professional capacity;

c) The field in which he/she is associated in any professional capacity;

d) A summary of his/her qualifications within the field in which he/she is expected to testify;

e) The substance of the facts to which he/she is expected to testify;

f) The substance of the opinions to which he/she is expected to testify and a summary of the grounds for each opinion; and

g) State the dates of all reports rendered by such experts, and the name and address of all persons receiving same.

ANSWER:  N/A

*Id.* at 39-41.

[32] On October 7, 2013, Stephens filed a motion for summary judgment designating:  1) the pleadings; 2) Fazio's answers to Interrogatory Nos. 10, 33, and 34; and 3) Stephens's affidavit, to which he attached a booklet explaining the risks of the surgical procedures Fazio was considering (each page initialed by Fazio and signed and dated on the last page), and a signed and fully executed informed consent form designed specifically for Fazio and her particular procedures dated June 29, 2011.

[33] The informed consent form provided that normal symptoms after surgery included moderate swelling and bruising, as well as mild to moderate discomfort or pain, but that severe swelling and bruising indicative of a problem could occur and that severe pain should be reported to Stephens and his staff. *Id.* at 47.  The form also noted the increased risk of poor healing for smokers. *Id.* at 48.  The form explicitly provided as follows under the heading "Unsatisfactory Result & Need For Revisional Surgery":

> All Plastic Surgery treatments and operations are performed to improve a condition, a problem or appearance.  While the procedures are performed with a very high probability of success, disappointments occur and results are not always acceptable to patients or the surgeon.  Secondary procedures or treatments may be indicated.  Problems may occur that are permanent.
>
> POOR RESULTS:  Asymmetry, unhappiness with the result, poor healing, etc. may occur.  Minimal differences are usually

acceptable. Larger differences frequently require revisional surgery.

*Id.*

[34] The informed consent form further provided with respect to "Explanation of Breast Prosthesis With Secondary Augmentation Mammoplasty":

> ASYMMETRY: If your breasts had slightly different shapes before surgery, they may remain slightly different after surgery. Rarely, in spite of careful attention to detail, the dissected pockets may end up slightly different in shape or height. If this is not noted while you are in surgery, but becomes a problem after healing, you may later need a small adjustment procedure.

*Id.* at 50.

[35] Regarding the breast lift procedure, the informed consent booklet provided as follows under the heading "Standard Mastopexy (Breast Lift):

> INCISIONS (SCARS): Using the standard technique for this procedure, you will have scars around the areola, in a vertical line from the areola to the crease below the breast, and horizontally in the crease. The scars usually flatten and fade with time, but thicker and heavier scars can persist and require subsequent treatment, including surgery. For some reason, the scars extending toward the axilla (underarm area) are frequently thicker and heavier than those elsewhere. Redness of the scars may continue to fade for up to 2 years.
>
> . . . .
>
> ASYMMETRY: Mastopexy operations involve very careful planning and execution in order to achieve complete symmetry and a natural look for each breast. Because the planning of this operation combines "art" and "science," it is not always possible to predict perfect and equal breast shapes. Should you have

slight asymmetry after healing, a small subsequent operation usually solves the problem.

. . . .

POOR RESULTS: Asymmetry, unhappiness with breast size, poor healing, unequal nipple height, etc. may occur. Minimal differences are usually acceptable. Larger differences frequently require revisional surgery.

*Id.* at 51-52.

[36] Regarding the reverse abdominoplasty, or mini-tummy tuck, Stephens's notes revealed as follows:

She has skin laxity of the abdominal wall, primarily in the upper abdomen and epigastric area. We settled on a reverse abdominoplasty procedure through the inframammary incisions in order to help further smooth the upper abdomen. I reviewed the operation with her. She understands problems can occur with surgery such as bleeding, infection, thick scars, permanent sensation changes, seroma formation and she wishes to proceed with the operative plan.

Joint Exhibit Book, Tab 1, p. 40.

[37] The Estimate of Surgical Fees provided to Fazio by Stephens for the three procedures itemized the costs and also included the following language: "*Fees quoted do not include revisions, hospital stays or excess fees due to complications.*" Joint Exhibit Book, Tab 1, p. 25 (emphasis added).

[38] Stephens's affidavit included his account of the patient-physician relationship, information that had been provided to Fazio, and the two post-operative visits. He stated that it was his understanding that Fazio "believes I did a poor job

placing her implants and suturing her incision." Appellants' App. p. 45. He further stated that in his opinion he had met the appropriate standard of care with respect to Fazio's treatment despite her displeasure with the immediate results.

[39] Stephens's affidavit, which was designated in support of his motion, further states in paragraph 13 as follows:

> In my opinion, and based upon my review of the medical records, as well as my education, experience, and training, my treatment of Ms. Fazio was within the standard of care at all times. It was appropriate for me to describe the potential post-operative complications, which included asymmetry and malposition, and to allow Ms. Fazio to decide whether she wished to proceed.

*Id.*

[40] The memorandum in support of Stephens's motion noted that Fazio had not identified expert opinion to rebut Stephens's opinion that he met the applicable medical standard of care. Stephens argued that without that contradictory expert testimony he was entitled to summary judgment because absent that expert testimony there was no genuine issue of material fact about whether Stephens had breached his duty to Fazio by engaging in conduct falling below the applicable standard of care. The motion also sought summary judgment in favor of Summit, arguing that Summit was named as a defendant in the cause of action under an agency theory, respondeat superior, but there were no independent allegations of negligence as to Summit in Fazio's complaint.

[41]     On December 9, 2013, Fazio filed her response to Stephens's motion for summary judgment and asserted her own cross-motion for partial summary judgment, alleging that while some medical malpractice claims require expert testimony, other cases may proceed without expert testimony where the information is commonly known and understood by laypersons. Fazio claimed for the first time that her case was the latter because she had the following criticisms of Stephens's treatment: 1) he improperly described the procedure as being performed in and along the crease of her breast where scars could not be seen; 2) Stephens failed to provide Fazio with information indicating an acceptable outcome was a mal-positioned implant causing long-term pain; and 3) Stephens failed to inform Fazio that she would incur charges associated with any remediation procedures associated with such poor outcomes. She sought partial summary judgment on liability. In support of her response and motion for partial summary judgment, Fazio designated the following: 1) the pleadings; 2) Stephens's deposition at pages 10, 12, 18-22, 26, 33, 34, 39, 40-43; 3) Fazio's affidavit; and 4) Fazio's deposition in its entirety. A copy of an unsigned booklet explaining the risks of the surgical procedures was attached as an exhibit to Fazio's affidavit.

[42]     On January 13, 2014, Stephens filed his reply in support of his motion for summary judgment and response in opposition to Fazio's cross-motion for partial summary judgment. Stephens alleged that Fazio had designated no expert testimony to support her claim, and that there was not enough evidence to support her cross-motion for partial summary judgment. The evidence he

designated was: 1) his deposition at page 11 and page 21; and 2) his second affidavit.

[43] In this second affidavit, Stephens described the procedures he performed at Fazio's request and the reasoning behind the particular techniques used. He also stated that issues such as tissue reaction factors, the physiological effects of lifestyle, health, and heredity on the elasticity of a patient's skin, and the expert analysis involved in evaluating the specific outcome of plastic surgery were not within the common knowledge of laypersons.

[44] On January 14, 2014, the trial court held oral argument on the parties' motions. In its order dated February 18, 2014, the trial court made a preliminary ruling that the nature of Fazio's complaint was informed consent. The trial court explained as follows:

> As a threshold matter, the Court must decide if Ms. Fazio's claim is better characterized as one alleging a lack of informed consent, or one alleging that Dr. Stephens was negligent in his performance of the surgery upon Ms. Fazio. After reviewing Ms. Fazio's Motion for Partial Summary Judgment, the Court concludes that Ms. Fazio's claim is one centered on informed consent. Ms. Fazio clearly articulates three complaints against Dr. Stephens, all of which focus on the contention that Dr. Stephens did not properly inform her of the surgery she was to undergo. Additionally, Ms. Fazio explicitly states in her Motion for Partial Summary Judgment that Ms. Fazio "does not care to challenge Dr. Stephens' belief as to what he thinks is or is not an acceptable outcome for a surgeon under these or similar circumstances. Rather, the sole issue simply hinges on an undisputed factual issue: whether Dr. Stephens disclosed the procedure and outcomes that he contends were proper in this

case." Thus, the Court takes Ms. Fazio's claim for what she purports it to be—an informed consent claim.

*Id.* at 248-49.

[45] Stephens, however, had responded to the complaint under the theory of negligence in the performance of surgery. Despite noting the obvious conflicting positions of the parties the trial court based its determination of the nature of the complaint on the arguments presented for the first time in Fazio's cross-motion for partial summary judgment. *Id.* at 248-49. In that motion she contended her three main criticisms of Stephens's treatment centered on the issue of informed consent. Citing *Bowman v. Beghin*, 713 N.E.2d 913 (Ind. Ct. App. 1999), the trial court determined that no expert testimony was necessary to prove Fazio's informed consent claim, and, thus, denied Stephens's motion for summary judgment.

[46] The trial court then turned to the designated materials in support of and in opposition to Fazio's cross-motion for partial summary judgment. Although Stephens had designated the signed and initialed booklet explaining the risks of the surgical procedures Fazio was considering (each page initialed by Fazio and signed and dated on the last page), and a signed and fully executed informed consent form in support of his own motion for summary judgment, he did not specifically designate that evidence in opposition to Fazio's motion.

[47] In granting Fazio's motion for partial summary judgment on the issue of liability, the trial court observed that Stephens had failed to designate evidence that Fazio was informed that an acceptable outcome was a mal-positioned

implant causing long term pain, or that she was informed she would incur additional charges associated with any possible remediation. The trial court further found that Stephens had not designated evidence to contradict Fazio's claim that he improperly described the procedure as being performed in and along the crease of her breast where scars could not be seen.

[48] Stephens filed a motion asking the trial court to reconsider its ruling on summary judgment or to certify its opinion for interlocutory appeal. After holding a hearing on the request, the trial court issued an order on April 11, 2014, denying Stephens's motion.

[49] Stephens filed another motion for summary judgment, this time arguing the affirmative defenses of contributory negligence and assumption of the risk. Stephens contended that Fazio's failure to follow his post-operative instructions constituted contributory negligence and that her understanding of the possible surgical outcomes after having read and understood the informational booklet constituted assumption of the risk. After holding a hearing on the motion and taking the matter under advisement, the trial court denied the motion, finding that the prior ruling on liability precluded a determination of contributory negligence. The trial court concluded, however, that the topic of Fazio's failure to follow her post-operative instructions could be introduced at trial on the issue of Fazio's failure to mitigate damages. The parties and the trial court agreed that the issues of causation and damages from Fazio's lack of informed consent had not been resolved by way of the summary judgment ruling. Those issues

were left to be resolved at trial. Stephens's motion requesting certification of the order for interlocutory appeal was denied.

[50] Stephens and Fazio each filed motions in limine prior to trial. Fazio's motion sought to exclude all references to issues which were decided on summary judgment. Stephens contended that he was entitled to prove that his alleged failure to inform Fazio of certain surgical risks was not the cause of her claimed damages. Stephens also argued that he should be allowed to question witnesses about causation, and show that Fazio did not suffer damages from her lack of informed consent. He also sought an order allowing him to introduce evidence to prove that if fully informed, Fazio would have had the surgery and that a reasonable person would have done the same. No written order addressing or deciding these motions appears in the record.

[51] The trial court gave Preliminary Instruction Numbers 5, 7, and 8, which limited and defined the issues to be decided by the jury. The jury was instructed that they were to decide: 1) whether Stephens' failure to obtain Fazio's informed consent was the responsible cause of her injuries and damages; 2) the nature and extent of Fazio's injuries and damages; 3) whether Fazio failed to mitigate her damages; and 4) the amount of money, if any, which would fairly compensate Fazio for the injuries and damages she suffered. Appellants' App. p. 459. The jury was informed that the trial court had already determined that Stephens did not inform Fazio that: 1) an acceptable outcome was a mal-positioned implant; 2) she could have visible scarring from the procedure; and 3) a revision procedure might be necessary, for which she would be financially

responsible. They were instructed that Fazio would have rejected the surgical procedure performed by Stephens had she been informed of those risks. At the conclusion of the trial, the jury was given Final Instruction No. 8, which informed them that Fazio had a duty to follow Stephens's instructions to mitigate her damages.

[52] The two-day jury trial began on April 7, 2015. Stephens sought a directed verdict at the conclusion of Fazio's case-in-chief, arguing that Fazio had failed to offer expert testimony to prove she suffered damages from her lack of informed consent. After the trial court denied Stephens's motion, Stephens made an offer of proof on the issue of informed consent. Stephens tendered his affidavit with Fazio's signed and initialed informed consent form. He also tendered: 1) an informed consent document Fazio had signed in April 2002, after consulting with Dr. Matthew Shambaugh of Summit Plastic Surgery, P.C.; 2) the informed consent document Fazio executed in May 2002 after consulting with Severinac, in which the issue of the patient's responsibility for additional costs associated with secondary surgery, and the possible outcomes of asymmetry with pain and scarring were addressed; and, 3) the informed consent form Fazio executed in August 2011, after consulting with Severinac. The trial court denied Stephens's offer of proof and refused to admit the evidence on the ground that the issue of Fazio's informed consent had been determined by way of its prior summary judgment order.

[53] At trial, Fazio was asked for what injury or damages she was seeking compensation. She agreed that the only existing injury was in relation to the

left side scar, and that she was not seeking any other type of compensation for anything else done by Stephens. Tr. p. 96. Fazio stated that she wanted to have Severinac perform the procedure to attempt to raise the location of the scar under her left breast. However, she did not believe that she could afford it and she wanted to wait until after the trial because "we had taken photos to show that it was still an issue today and that it had not gotten any better." *Id.* at 94.

[54] After the close of evidence, the trial court instructed the jury. The jury returned a verdict in favor of Stephens and the trial court entered judgment on the verdict. Later, Fazio filed a motion for additur and judgment on the evidence in her favor. The trial court treated the request as a motion to correct error. The trial court vacated the jury's verdict and entered judgment in favor of Fazio for the amount of $8,847.00. The trial court concluded there was "no evidence to support a verdict for Defendants awarding no damages" because the trial court had previously concluded that the undisputed evidence showed Fazio would not have undergone the surgery had she known of the risks. Appellants' App. p. 17. Stephens now appeals, seeking to have the jury's verdict reinstated or a new trial.

# Discussion and Decision

## Motion to Correct Error

[55]   Stephens claims that the trial court should not have granted Fazio's motion to correct error because there is sufficient evidence to support the jury's verdict in his favor.

[56]   Indiana Trial Rule 59(J)(5) allows a trial court, in the case of excessive or inadequate damages, to enter final judgment on the evidence for the amount of proper damages. This remedy is available only where the evidence is insufficient as a matter of law to support the jury's verdict. *Carbone v. Schwarte*, 629 N.E.2d 1259, 1261 (Ind. Ct. App. 1994). On review, we use the same standard as the trial court; namely, we consider only the evidence and reasonable inferences favorable to the non-moving party, and we may not weigh conflicting evidence or judge the credibility of witnesses. *Id.* Furthermore, a damage award must be within the scope of the evidence presented to the jury. *Id.*

[57]   The trial court's order included a reference to Final Instruction 7, which reads in pertinent part as follows:

> This Court has already determined that:
> 1.   Dr. Stephens performed a bilateral explanation of breast prosthesis with second augmentation mammoplasty, a bilateral full standard mastopexy, and a procedure to revise a prior abdominoplasty;

2.    Dr. Stephens had a duty to inform Plaintiff, Jaime Fazio, of important facts concerning treatment. Specifically, Dr. Stephens had a duty to inform Plaintiff:

   a.    That an acceptable outcome was a mal-positioned implant;

   b.    That she could have visible scarring from the procedure; and

   c.    That a revision procedure might be necessary, for which she would be financially responsible.

3.    Dr. Stephens did not inform Jaime Fazio of these facts;

4.    That Jaime Fazio would have rejected the surgical procedures performed by Dr. Stephens had she been informed of the risks set forth above.

. . . .

Therefore, the issues to be decided by you are as follows:

1.    Whether the failure to obtain Jaime Fazio's informed consent by Dr. Stephens was the responsible cause of injuries and damages to the Plaintiff, Jaime Fazio;

2.    The nature and extent of Plaintiff's injuries and damages;

3.    Whether the Plaintiff failed to mitigate her damages; and

4.    The amount of money, if any, which would fairly compensate the Plaintiff, Jaime Fazio, for the injuries and damages she suffered.

Appellants' App. pp. 474-76.[3]

---

[3] For the first time on appeal, Stephens also attacks the trial court's order granting partial summary judgment in favor of Fazio because she failed to present or designate evidence that a reasonable person if properly informed would have declined to have surgery. A party may not raise a new argument for the first time on appeal. *Art Country Squire, L.L.C. v. Inland Mortg. Corp.*, 745 N.E.2d 885, 892 n.3 (Ind. Ct. App. 2001).

[58] The trial court noted "undisputed" evidence that Fazio underwent surgical treatment performed by Stephens, that she would not have undergone the surgery had she been properly informed of the risks, and that she paid $8,847.00 to Stephens for the surgery. *Id.* at 17. The trial court also found that there was no evidence to support a verdict for Stephens awarding no damages to Fazio, and that such an award was not within the scope of evidence presented to the jury, or based upon the instructions read to the jury. *Id.* Additionally, the trial court noted that after reviewing the evidence, it was apparent that the amount of damages was so small that it indicated the jury was motivated by prejudice, passion, partiality, corruption, or that it considered some improper element. *Id.* The award was inadequate, according to the trial court, because it failed to compensate Fazio for "actual, undisputed medical expenses directly attributable to undergoing surgery." *Id.*

[59] The jury was also given Final Instructions Nos. 8, 11, and 12 prior to deliberating, which read in pertinent part as follows:

> The Plaintiff must use reasonable care in following a plastic surgeon's instructions after being treated to assist in her recovery.
>
> In this case, Defendants Dr. Stephens and Summit Plastic Surgery Center claim that Plaintiff, Jaime Fazio, did not use reasonable care in following Dr. Stephens's instructions. If you decide that Plaintiff is entitled to damages and you also decide that Defendants have proven the following by the greater weight of the evidence:
>
> 1. Plaintiff, Jaime Fazio, failed to follow reasonable instructions that Dr. Stephens gave after the alleged act of medical negligence; and

2.      A person using reasonable care in the same or similar circumstances would have followed Dr. Stephens's instructions; and

3.      Plaintiff, Jaime Fazio's failure to follow the instructions was a responsible cause in contributing to her damages,

then you should reduce the amount of money you would otherwise award Plaintiff, Jaime Fazio, by the value of the damages you decide resulted from her failure to follow instructions.

. . . .

If you decide from the greater weight of the evidence that the failure to obtain Plaintiff Jaime Fazio's informed consent by Defendant Dr. Stephens was the responsible cause of injuries and damages to the Plaintiff, Jaime Fazio, then you must decide the amount of money that will fairly compensate Plaintiff. In deciding the amount of money you award, you may consider:

1.      The nature and extent of Plaintiff's injuries;

2.      Whether Plaintiff's injuries are temporary or permanent;

3.      The physical pain and mental suffering Plaintiff has experienced and will experience in the future as a result of the injuries;

4.      The reasonable value of necessary medical care, treatment, and services Plaintiff incurred and will incur in the future as a result of the injuries; and

5.      The disfigurement resulting from the injury.

. . . .

In deciding what amount, if any, to award Plaintiff, Jaime Fazio, in damages, you must base your decision on the evidence and not on guess or speculation. However, damages need not be proven to a mathematical certainty.

*Id.* at 477, 480, 481.

[60] The evidence most favorable to Stephens, the non-moving party, shows that Fazio failed to follow several of the post-operative instructions. She did not wear the support bra or use the velcro strap as directed, and spent time in the sun within weeks of her surgery. Although it was not medically necessary, surgery under Severinac's care was conducted to re-position Fazio's right implant within months of the surgery completed by Stephens. Fazio did not return for further post-operative appointments with Stephens and did not allow him the opportunity to correct whatever injuries Fazio had sustained. At trial, Fazio claimed that the only remaining injury for which she was seeking compensation was the scar under her left breast. Stephens and Severinac testified that when Fazio's arms were hanging down by her sides, the scars under her breasts were not visible.

[61] Further, the trial court gave the jury two verdict forms from which to choose. If its ruling on liability truly foreclosed any option of a defense verdict, then the trial court erred by giving the jury that option.

[62] The jury was instructed that they were to determine the nature and extent of Fazio's injuries, and the reasonable value of necessary medical care, treatment, and services Fazio incurred and will incur in the future as a result of the injuries. There was evidence that Fazio failed to mitigate her damages. Thus, there was sufficient evidence adduced at trial to support the jury's verdict in favor of Stephens and the zero damages award was within the scope of the evidence. Therefore, the trial court erred by vacating the jury's verdict and awarding damages to Fazio.

# Conclusion

[63]    In light of the foregoing, we find that the trial court erred by vacating the jury's verdict and entering judgment in favor of Fazio and awarding her damages. We remand this matter to the trial court to reinstate the jury's verdict in favor of Stephens.

[64]    Reversed and remanded.

Kirsch, J., and Bradford, J., concur.